■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v HILBERT HUNTLEY, Also Known as CHARLES HUNTLEY, Appellant.—Judgment, Supreme Court, Bronx County, rendered on November 14, 1973, convicting defendant, after trial before Warner, J., and a jury, of the crimes of criminal possession of a dangerous drug in the fourth degree and criminal possession of a dangerous drug in the sixth degree, affirmed. The defendant's motion to suppress was properly denied. We affirm the denial on the written decision of Justice Joseph P. Sullivan, which we find to be well reasoned and sound. It carefully considered the arguments advanced by the defendant in support of his position and extensively reviewed the law applicable thereto. We have considered the remaining arguments of the defendant, advanced in support of his appeal, and find them to be without merit. Concur—Markewich, Kupferman and Capozzoli, JJ.; Stevens, P. J., and Murphy, J., dissent in the following memorandum by Murphy, J.: MURPHY, J. (dissenting). We vote to reverse defendant's conviction and to dismiss the indictment. Appellant, whose prior conflict with the law provided the name for the hearing now held to initially determine the voluntariness of a confession *(People v Huntley,* 15 NY2d 72), appeals from a judgment convicting him, after a jury trial, of the crimes of criminal possession of a dangerous drug in the fourth and sixth degrees. The instant conviction has a substantial nexus with his former one (for armed robbery), since it stems from a consequence of his failure to comply with a condition of his parole which was granted after some twelve years in prison. Huntley was paroled from Attica to Parole Officer Donnelly on May 10, 1971. On August 25, 1972, Parole Officer O'Neill took over supervision of defendant's parole. During the Fall of 1972 defendant was placed on a weekly reporting basis by O'Neill. When Huntley failed to report on December 5 and 12, O'Neill caused a parole violation warrant to be issued which he executed, with the assistance of five other parole officers, on December 15, 1972. Although it was then only 1:30 P.M., defendant was found in sleeping attire.

He was immediately arrested, frisked, handcuffed and seated at the foyer table under guard for violating his parole. An exhaustive search of the apartment disclosed the presence of various items of contraband, including a substantial quantity of drugs found on a shelf and under some clothing in a hallway closet. In response to O'Neill's question, defendant stated that his failure to report on December 5 and 12 was attributable to the fact that he had hepatitis and to the absence of a phone in the apartment (both assertions later confirmed to be true). He also allegedly made two inculpatory statements. Appellant testified in his own defense at the trial. He averred that he had sublet the apartment he was found occupying, with his landlord retaining access rights thereto. He also stated that his instructions were to refrain from using the closet, which admonition he heeded; and that none of the contraband found in the apartment belonged to him. Finally, he denied making any incriminating statements to the parole officers, contemporaneously with his arrest or subsequent thereto. The court below sustained the search and seizure "as an incident to the parole officer's investigation of a parole violation" and as "an incident to an arrest on an administrative warrant." We disagree. A parolee, though perhaps not meriting precisely the same rights as the average citizen, is still entitled to constitutional protection against unreasonable searches and seizures. Whatever rationale previously countenanced special intrusions into the parolee's privacy by his supervising officer was severely undercut by the Supreme Court's landmark decision in *Morrissey v Brewer* (408 US 471.) But even applying a diluted standard in the case of one on parole, the test is still one of reasonableness under the circumstances; or, stated differently, there must be some valid basis for concluding that the parolee is or may be engaging in criminal activity. (See, e.g., *People v Santos,* 31 AD2d 508, affd 25 NY2d 976, cert den 397 US 969; *Latta v Fitzharris,* 521 F2d 246; *People v Fortunato,* 50 AD2d 38.) No such threshold determination can be made in the instant case. O'Neill admitted that he had no information connecting Huntley with narcotics or any other unlawful conduct. He ordered a search merely because he suspected that defendant, based on his past history, might have a gun hidden in the apartment. A fullblown exploratory search of the apartment in which appellant resided, grounded solely on such mere whim, if sustained, is tantamount to holding that a parolee forfeits *all* right to Fourth Amendment protection. We do not believe this to be the law. Based on the foregoing, the judgment appealed from should be reversed and the indictment dismissed.