Jeffrey C. SOUDERS

v.

Parole Agents, Frank KROBOTH,
Alan Dale *.

Civ. A. No. 81–930.

United States District Court,
E. D. Pennsylvania.

Sept. 23, 1982.

Stephen R. Harris, Philadelphia, Pa., for plaintiff.

John T. Kalita, Deputy Atty. Gen., Philadelphia, Pa., for defendants.

## OPINION

LUONGO, Chief Judge.

Jeffrey Souders, the plaintiff in this action under 42 U.S.C. § 1983, seeks damages from defendants, Frank Kroboth and Alan

* Improperly designated Allen Dale in the complaint.

Dale, in their individual capacity for violating his federal constitutional rights. Count I of Souders' complaint alleges that defendants, both of whom are employed by the Pennsylvania Board of Probation and Parole (Board), while acting under color of state law, violated his Fourteenth Amendment right to due process in that they used illegally seized evidence to cause charges of parole violation to be placed against him which ultimately resulted in the revocation of his parole. Count II of the complaint alleges that defendants, while acting under color of state law, violated his Fourth and Fourteenth Amendment right to be secure from arbitrary government invasions by conducting an unlawful search of his home. The defendants have now moved for summary judgment. Fed.R.Civ.P. 56.

In its entirety, the record on this motion consists of the amended complaint, the defendants' answer thereto, and the individual affidavits of the defendants submitted in support of their motion for summary judgment. The plaintiff has submitted a memorandum of law in opposition to the defendants' motion, but has offered no opposing affidavits. Based on these materials, there is no dispute as to the following facts.

On December 23, 1980, plaintiff was awaiting a job interview at a business establishment in Allentown, Pennsylvania, when he was arrested by defendants for failing to report regularly to his parole agent in violation of the plan of parole approved for him by the Board. Defendants then conducted a pat down of plaintiff and discovered a pipe that had a "distinct odor of marijuana about it." (Kroboth Affidavit, ¶ 13.) The plaintiff was then handcuffed and taken to the Lehigh County Prison. While enroute to the prison, plaintiff attempted to strangle himself with the chain of the handcuffs, but was restrained by defendants. After plaintiff was placed in custody, defendants went to plaintiff's residence, informed his wife of the arrest, and requested permission to search the premises. When asked by plaintiff's wife

whether they had a warrant to search, they responded that no warrant was necessary because plaintiff was a parolee. Defendants then searched the premises and found two marijuana cigarettes and various drug paraphernalia.

The next day, December 24, 1980, plaintiff was informed by his parole agent, Barry Statkus, that his home had been searched and that drugs had been found. Five days later, plaintiff received formal notice that he was being charged with the following violations of his plan of parole: (1) failure to report regularly as instructed to his parole agent; (2) failure to abstain from the unlawful possession and/or sale of narcotics or other dangerous drugs, and (3) failure to refrain from engaging in behavior dangerous to himself or others. The notice of charges was signed by Parole Supervisor Francis J. Stehling. A parole revocation hearing was held on December 31, 1980, and approximately one month later, the Board revoked plaintiff's parole.

Count I of plaintiff's complaint, as I mentioned earlier, seeks damages in connection with the use of the evidence obtained in the search. The gravamen of plaintiff's causes of action is set forth in paragraph twelve of the amended complaint, which reads in pertinent part:

> By means of the evidence seized by defendants in their illegal search of plaintiff's apartment, defendants caused charges to be placed against the plaintiff which, in turn, caused plaintiff's recommitment for all or part of the term of twelve (12) months, thus depriving plaintiff of liberty without due process of law in violation of the Fifth and Fourteenth Amendments . . . ."

Defendants contend that plaintiff has stated no claim for relief because, even assuming the illegality of the search, the exclusionary rule does not apply in parole revocation hearings. In support of their argument, defendants rely on *United States ex rel. Sperling v. Fitzpatrick,* 426 F.2d 1161 (2d Cir. 1970), which held that the fruits of an unlawful search and seizure are admissible in parole revocation proceedings.

Plaintiff responds to defendants' contention, arguing that the fact that one remedy (suppression) is not available to redress a violation of his constitutional rights in no way implies that an alternative remedy (damages) is likewise not available.

Plaintiff's argument presupposes that a distinct constitutional right of his was violated when defendants used the fruits of the illegal search to cause charges of parole violation to be lodged against him.[1] An analysis of the validity of this presupposition must begin with the United States Supreme Court's decision in *Morrissey v. Brewer,* 408 U.S. 471, 92 S.Ct. 2593, 38 L.Ed.2d 484 (1972).[2] In *Morrissey,* the Court was confronted with the broader question of whether the requirements of due process apply at all to parole revocation. While the Court concluded that a parolee is entitled to due process, it held that all the Constitution requires is that the parolee be given "an opportunity to be heard and to show, if he can, that he did not violate the conditions, or if he did, that circumstances in mitigation suggest that the violation does not warrant revocation." *Id.* at 488, 92 S.Ct. at 2603. The Court was careful to point out, however, that the full panoply of rights due a defendant in a criminal proceeding does not apply to parole revocation. More specifically, in delineating the minimum requirements of due process that must be afforded in revocation proceedings, the Court stated:

> We emphasize that there is no thought to equate this second stage of parole revocation to a criminal prosecution in any sense. It is a narrow inquiry; the proc-

---

1. I assume without deciding that the search of plaintiff's residence was unlawful.

2. In identifying the fount of this constitutional right to exclusion, plaintiff may not rely on the fourth amendment prohibition against unreasonable searches and seizures. The Supreme Court has made abundantly clear that the exclusionary rule is a "judicially created remedy . . . rather than a personal constitutional right of the party aggrieved." *United States v. Calandra,* 414 U.S. 338, 348, 94 S.Ct. 613, 620, 38 L.Ed.2d 561 (1974).

ess should be flexible enough to consider evidence including letters, affidavits, and other material that would not be admissible in any adversary criminal trial.

*Id.* at 480, 92 S.Ct. at 2599.

Subsequent to *Morrissey,* several · courts considered the issue of whether due process requires the exclusion of illegally seized evidence in parole or probation revocation proceedings. According to the great weight of authority, exclusion is not required in such proceedings because the harmful effects on the parole system which would result were exclusion required are believed to outweigh the marginal deterrence which might be achieved if the exclusionary rule were applied in revocation proceedings. *See, e.g., United States v. Winsett,* 518 F.2d 51 (9th Cir. 1975); *United States v. Farmer,* 512 F.2d 160 (6th Cir.), *cert. denied,* 423 U.S. 987, 96 S.Ct. 397, 46 L.Ed.2d 305 (1975); *State v. Sears,* 553 P.2d 907 (Alaska 1976). *But see United States v. Workman,* 585 F.2d 1205 (4th Cir. 1978).[3] Since the time oral argument was heard on defendants' motion, a panel of the Court of Appeals for the Third Circuit concluded that the exclusionary rule has no application to probation revocation proceedings but that panel decision was vacated for an *en banc* hearing. *United States v. Bazzano, et al.,* No. 81–1936 (3d Cir., May 12, 1982), *vacated and rehearing en banc granted,* (3d Cir., Aug. 10, 1982).

I need not decide the constitutional issue of whether due process requires the exclusion of illegally seized evidence in parole revocation proceedings, for, even if the Court of Appeals for the Third Circuit were to disagree with the majority of courts which have held that exclusion is not required, defendants would still be entitled to qualified immunity from liability for dam-

ages to plaintiff. *See Harlow v. Fitzgerald,* —— U.S. ——, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982); *Procunier v. Navarette,* 434 U.S. 555, 98 S.Ct. 855, 55 L.Ed.2d 24 (1978).

Having pleaded the qualified immunity defense, the defendant parole officers are imbued with immunity provided they establish that they acted in good faith. *Thompson v. Burke,* 556 F.2d 231, 239 (3d Cir. 1977). Recently in *Harlow v. Fitzgerald, supra,* the Supreme Court held that the good faith defense turns "primarily on *objective* factors." —— U.S. at ——, 102 S.Ct. at 2734 (emphasis added).

> On summary judgment, the judge appropriately may determine, not only the currently applicable law, but whether that law was clearly established at the time an action occurred. If the law at that time was not clearly established, an official could not reasonably be expected to anticipate subsequent legal developments, nor could he fairly be said to "know" that the law forbade conduct not previously identified as unlawful.

*Id.* Because a conflict presently exists among the circuits concerning the applicability of the exclusionary rule to parole revocation proceedings, *compare United States v. Winsett, supra, with United States v. Workman, supra,* I conclude that defendants are immune from liability for damages for the use of illegally seized evidence in connection with plaintiff's parole revocation hearing. Accordingly, summary judgment will be entered in favor of defendants on Count I of plaintiff's complaint.

In Count II of the amended complaint, plaintiff alleges that defendants violated his fourth and fourteenth amendment rights when they made a warrantless search

---

**3.** Several other courts, without discussing the due process implications, have held that the exclusionary rule does not apply to parole or probation revocation proceedings. *See United States v. Frederickson,* 581 F.2d 711 (8th Cir. 1978); *United States v. Winsett,* 518 F.2d 51 (9th Cir. 1975); *United States v. Farmer,* 512 F.2d 160 (6th Cir.), *cert. denied,* 423 U.S. 987, 96 S.Ct. 397, 46 L.Ed.2d 305 (1975); *United States v. Brown,* 488 F.2d 94 (5th Cir. 1973);

*United States v. Hill,* 447 F.2d 817 (7th Cir. 1971); *State v. Sears,* 553 P.2d 907 (Alaska 1976); *In re Martinez,* 1 Cal.3d 641, 463 P.2d 734, 83 Cal.Rptr. 382, *cert. denied,* 400 U.S. 851, 91 S.Ct. 71, 27 L.Ed.2d 88 (1970); *People v. Atencio,* 186 Colo. 76, 525 P.2d 461 (1974); *Croteau v. State,* 334 So.2d 577 (Fla.1976); *People v. Dowery,* 62 Ill.2d 200, 340 N.E.2d 529 (1975); *State v. Thorsness,* 165 Mont. 321, 528 P.2d 692 (1974).

of his residence. Defendants argue that they are entitled to summary judgment on this claim because, in their view, a parole agent who reasonably suspects that a parolee is violating the terms needs no warrant to conduct a search of his parolee's home. Plaintiff, on the other hand, contends that a warrant was required.

Once again, because there is a conflict among the circuits on the issue of whether a parole agent—in the absence of a recognized exception to the warrant requirement—needs a warrant to search his parolee's home, *compare Latta v. Fitzharris*, 521 F.2d 246 (9th Cir.) (*en banc*), *cert. denied*, 423 U.S. 897, 96 S.Ct. 200, 46 L.Ed.2d 130 (1975), *with United States v. Bradley*, 571 F.2d 787 (4th Cir. 1978), it is unnecessary for me to decide the constitutional issue.[4]

Even if the search were unconstitutional, defendants could not be expected to anticipate a change in the law. *Harlow v. Fitzgerald, supra,* —— U.S. at ——, 102 S.Ct. at 2734. Accordingly, since the test for qualified immunity is an objective one, I conclude that defendants have established the defense. Summary judgment will be entered in favor of defendants on Count II of the amended complaint.

---

**4.** The *Latta* and *Bradley* decisions are representative of the conflicting stances taken by the courts on the issue of whether a parole agent, in the absence of a recognized exception to the warrant requirement, may search a parolee's home without first obtaining a warrant. *Compare United States ex rel. Santos v. New York State Bd. of Parole*, 441 F.2d 1216 (2d Cir. 1971), *cert. denied*, 404 U.S. 1025, 92 S.Ct. 692, 30 L.Ed.2d 676 (1972); *People v. Hernandez*, 229 Cal.App.2d 143, 40 Cal.Rptr. 100, *cert. denied*, 381 U.S. 953, 85 S.Ct. 1810, 14 L.Ed.2d 725 (1965); *People v. Anderson*, 189 Colo. 34, 536 P.2d 302 (1975); *State v. Williams*, 486 S.W.2d 468 (Mo.1972); *People v. Huntley*, 43 N.Y.2d 175, 371 N.E.2d 794, 401 N.Y.S.2d 31 (1977); *Commonwealth v. Brown*, 240 Pa.Super. 190, 361 A.2d 846 (1976); *and State v. Simms*, 10 Wash.App. 75, 516 P.2d 1088 (1973) (indicating that parole officer needs no warrant to search) *with Diaz v. Ward*, 506 F.Supp. 226 (S.D.N.Y.1980); *United States ex rel. Coleman v. Smith*, 395 F.Supp. 1155 (W.D.N.Y.1975); *United States v. Lewis*, 274 F.Supp. 184 (S.D.N.Y.1967); *People v. Eastin*, 8 Ill.App.3d 512, 289 N.E.2d 673 (1972); *and State v. Cullison*, 173 N.W.2d 533 (Iowa), *cert. denied*, 398 U.S. 938, 90 S.Ct. 1841, 26 L.Ed.2d 270 (1970) (indicating that parole agent needs warrant to search). In the analogous situation of probation searches, *compare United States v. Gordon*, 540 F.2d 452 (9th Cir. 1976); *State v. Montgomery*, 115 Ariz. 583, 566 P.2d 1329 (1977); *Grubbs v. State*, 373 So.2d 905 (Fla.1979); *and Seim v. State*, 95 Nev. 89, 590 P.2d 1152 (1979) (indicating that probation officer needs no warrant to search) *with State v. Fogarty*, 610 P.2d 140 (Mont. 1980); *People v. Jackson*, 46 N.Y.2d 171, 385 N.E.2d 621, 412 N.Y.S.2d 884 (1978); *and State v. Tarrell*, 74 Wis.2d 647, 247 N.W.2d 696 (1976) (indicating that probation officer needs warrant to search). *See generally* 3 W. LaFave, *Search and Seizures* § 10.10 (1978 & 1982 supp.).