The PEOPLE of the State of Colorado, Plaintiff–Appellee,

v.

David B. TAFOYA, Defendant–Appellant.

No. 97CA0564.

Colorado Court of Appeals, Div. V.

Feb. 4, 1999.

Rehearing Denied March 4, 1999.

Certiorari Granted Sept. 13, 1999.

In 1994, defendant was convicted of possession of marijuana with intent to distribute. He was sentenced to a term in prison and later paroled. Pursuant to § 17–2–201(5)(f)(I)(D), C.R.S.1998, he signed an agreement containing several conditions to his parole. Among other things, defendant agreed "to allow the Parole Officer to search his person, or his residence, or any premises under his control, or any vehicle under his control."

While defendant was on parole, a police officer received information from a confidential informant, who had been reliable in the past, that defendant was to deliver a large amount of cocaine to another man named "Memo." When defendant's parole officer learned of the information, he and a police detective went to defendant's home and knocked on the front door.

A man who answered the door identified himself as "Memo." He informed them that defendant was out of the county. If this were true, defendant would have been in violation of one of the conditions of his parole.

The parole officer asked for and received permission from the man for them to search the house for defendant. They did not find defendant, but in a bathroom they saw an open, duct-taped cereal box containing a white substance. They took the box downstairs, where a dog trained to detect narcotics indicated the presence of a controlled substance.

Shortly thereafter, the police located defendant and brought him to the house. The parole officer stated that he and the police would be conducting a full search of the house. Defendant responded that he was "clean." During the search of the same bathroom where the box was found, the parole officer found drug paraphernalia and a sack containing 994.7 grams of cocaine.

Following defendant's conviction by a jury, the court conducted a bench trial on three habitual criminal counts. it found defendant guilty on all counts and thus sentenced him as a habitual criminal.

Gale A. Norton, Attorney General, Martha Phillips Allbright, Chief Deputy Attorney General, Richard A. Westfall, Solicitor General, Duncan DeVille, Special Assistant Attorney General, Paul Koehler, Assistant Attorney General, Denver, Colorado, for Plaintiff–Appellee.

David F. Vela, Colorado State Public Defender, Anthony Viorst, Deputy State Public Defender, Denver, Colorado, for Defendant–Appellant.

Opinion by Judge BRIGGS.

Defendant, David B. Tafoya, appeals the judgment of conviction entered on jury verdicts finding him guilty of possession of cocaine with intent to distribute, possession of cocaine in excess of 28 grams with intent to distribute, and possession of drug paraphernalia. He also appeals his sentencing as a habitual criminal. We affirm in part, vacate in part, and remand the cause for correction of the mittimus.

## I.

Defendant contends the search of his house violated his Fourth Amendment protection against unreasonable searches because the parole officer did not have "reasonable grounds" for the search. We conclude the search was legal.

## A.

■ Initially, we note that defendant at oral argument abandoned the argument that a warrant was required for a search of his residence. We agree that, because of defendant's status as a parolee who had consented to searches as a condition of parole, no warrant was required. *See* § 17–2–201(5)(f)(I)(D); *Griffin v. Wisconsin,* 483 U.S. 868, 107 S.Ct. 3164, 97 L.Ed.2d 709 (1987)(state statute may validly remove the requirement for a warrant before searching a probationer's home); *United States v. Cardona,* 903 F.2d 60 (1st Cir.1990)(applying *Griffin* to parolees); *Latta v. Fitzharris,* 521 F.2d 246 (9th Cir.1975); *United States ex rel. Santos v. New York State Board of Parole,* 441 F.2d 1216 (2d Cir.1971); *Commonwealth v. Williams,* 547 Pa. 577, 692 A.2d 1031 (1997); see also *People v. Anderson,* 189 Colo. 34, 536 P.2d 302 (1975); see generally P. Hassman, Annotation, *Validity, under Fourth Amendment, of Warrantless Search of Parolee or his Property by Parole Officer,* 32 A.L.R. Fed. 155 (1977).

## B.

Defendant asserts that, even though his parole agreement validly permitted warrantless searches, the search of his home was illegal because the parole officer did not have "reasonable grounds" for the search. We are not persuaded.

In *People v. Anderson, supra,* the supreme court recognized that a parolee is not deprived of all the protections afforded by the Fourth Amendment against unreasonable searches. However, because of the need for supervision, as well as the greater threat of other criminal activity, a parolee is subject to restrictions not applicable to other citizens. Hence, what may constitute an unreasonable search for others may be reasonable for a parolee.

The court in *Anderson* concluded that a parole officer may conduct a warrantless search, but only on "reasonable grounds." It did not define the standard.

The General Assembly later enacted § 17–2–201(5)(f)(I)(D). The statute requires, as a condition of parole, that a parolee must agree to allow a parole officer to search the parolee's person, residence, or vehicle.

Still later, in *Griffin v. Wisconsin, supra,* the United States Supreme Court upheld the constitutionality of a similar statute. However, a state regulation in that case expressly required "reasonable grounds" for a parole officer's search. The Supreme Court concluded that "reasonable grounds" was not the same degree of certainty as "probable cause."

The parole officer in *Griffin* had searched the defendant's apartment in response to a tip from a police officer that there were or "might be" guns in the apartment. The Supreme Court determined that the search was reasonable, even though the police officer's information was not based on firsthand knowledge.

Colorado's statute, § 17–2–201(5)(f)(I)(D), does not similarly require reasonable grounds, or even a reasonable suspicion, to justify a parole search. It simply requires that a parolee consent to search as a condition of parole.

Our appellate courts have not yet addressed whether, despite the absence of an express requirement in § 17–2–201(5)(f)(I)(D), a parole officer must have some basis for believing a parolee has committed a parole violation or crime in order to conduct a parole search. The majority of other courts that have considered consent provisions similar to § 17–2–201(5)(f)(I)(D) have reached one of two conclusions.

For some courts, parole searches are reasonable, even if the parole officer has no particular belief concerning a parole violation or criminal activity, so long as the searches are not made too often, for improper purposes, at unreasonable hours, or in an unreasonable manner. *See Owens v. Kelley,* 681

F.2d 1362 (11th Cir.1982); *United States ex rel. Randazzo v. Follette*, 282 F.Supp. 10 (S.D.N.Y.1968), *aff'd*, 418 F.2d 1319 (2d Cir.); *People v. Reyes*, 19 Cal.4th 743, 80 Cal. Rptr.2d 734, 968 P.2d 445 (1998); *State v. Zeta Chi Fraternity*, 142 N.H. 16, 696 A.2d 530 (1997).

For other courts, parole searches must be based on a reasonable suspicion, supported by specific and articulable facts, that the parolee has committed a parole violation or crime. *See United States v. Davis*, 932 F.2d 752 (9th Cir.1991); *United States v. Giannetta*, 909 F.2d 571 (1st Cir.1990); *State v. Fields*, 67 Haw. 268, 686 P.2d 1379 (1984); *People v. Woods*, 211 Mich.App. 314, 535 N.W.2d 259 (1995); *Commonwealth v. Williams, supra*; *State v. Velasquez*, 672 P.2d 1254 (Utah 1983); *State v. Massey*, 81 Wash.App. 198, 913 P.2d 424 (1996).

A few courts with statutes containing similar consent provisions have specified that a parole officer must have "reasonable grounds" for a parole search. However, these courts have in fact required no more than a reasonable suspicion, supported by specific and articulable facts, to believe that the parolee has committed a parole violation or crime. *See People v. Eiland*, 217 Ill. App.3d 250, 160 Ill.Dec. 231, 576 N.E.2d 1185 (1991); *Commonwealth v. LaFrance*, 402 Mass. 789, 525 N.E.2d 379 (1988); *Allan v. State*, 103 Nev. 512, 746 P.2d 138 (1987); *Pena v. State*, 792 P.2d 1352 (Wyo.1990); *State v. Velasquez, supra*; *cf. People v. Slusher*, 844 P.2d 1222 (Colo.App.1992). Even in those states that by statute or regulation expressly require "reasonable grounds," the justification actually required is no greater than the "reasonable suspicion" standard. *See Griffin v. Wisconsin, supra*.

This is not to say that a state cannot impose a higher standard to justify parole searches. *See State v. Cullison*, 173 N.W.2d 533 (Iowa 1970)(parolee accorded the same Fourth Amendment rights, privileges, and immunities as any other person). But we find nothing in the plain language of § 17–2–201(5)(f)(I)(D), in Colorado precedent, in the federal or state constitutions, or in policy that requires *more* than a reasonable suspi-

cion to justify an otherwise reasonable parole search.

Contrary to defendant's argument, we do not read *People v. Anderson, supra*, as requiring a different result. As earlier noted, the court in *Anderson* did not define "reasonable grounds." While in Colorado the term is sometimes used in connection with the standard of "probable cause," it is also used in connection with the standard of "reasonable suspicion." *Compare People v. Foster*, 788 P.2d 825 (Colo.1990)(probable cause in the case of a warrantless arrest requires that an arresting officer have reasonable grounds to believe that the person arrested has committed or is committing a crime) *with People v. Davis*, 669 P.2d 130 (Colo.1983)(reasonable grounds for order requiring nontestimonial identification requires articulable and specific basis for suspecting criminal activity). Further, as also earlier noted, *Anderson* was decided before § 17–2–201(5)(f)(I)(D) was enacted.

It is unnecessary to determine here whether § 17–2–201(5)(f)(I)(D) should be construed to require that a parole search be justified by "reasonable grounds," "reasonable suspicion," or some other standard of belief that a parolee has engaged in conduct constituting a parole violation or crime. The trial court found that the parole officer had a reasonable suspicion, supported by specific and articulable facts, that defendant was engaged in criminal activity. Defendant does not challenge the finding on appeal. Nor does defendant argue that, despite such a reasonable suspicion, the search was in some other way unreasonable.

■ In these circumstances, we need only conclude that § 17–2–201(5)(f)(I)(D) requires no more than that a parole officer have a reasonable suspicion, supported by specific and articulable facts, that the parolee has committed a parole violation or crime. As a result, the search of defendant's home was reasonable.

## II.

Defendant next challenges his conviction as a habitual criminal. He asserts that the trial court erred by admitting hearsay evi-

dence of his 1975 burglary conviction in New Mexico and that, even if it were admissible, the evidence was still insufficient to prove that conviction. We disagree.

The evidence of defendant's 1975 conviction was contained in the packet of information pertaining to his conviction for a 1978 burglary in New Mexico. That packet included a document entitled Judgment And Sentence On Supplemental Information. Among other things, the document states: "[Defendant] admitted that he was the same person convicted of burglary, a felony, in the District Court for San Juan County, New Mexico, on March 4, 1975 . . . ."

Defense counsel objected that the evidence was inadmissible hearsay, at least as it pertains to the 1975 conviction. The trial court admitted the document under § 16–13–102, C.R.S.1998 and CRE 803(22). It found that this evidence, together with photographs taken of defendant in connection with the 1978 conviction, was sufficient to establish the 1975 conviction.

### A.

 Defendant asserts the trial court erred in permitting evidence that was contained in the packet pertaining to his 1978 conviction to be used to prove his 1975 conviction. We conclude that, as a result of the combined effect of § 16–13–102 and CRE 803(22), the evidence was admissible.

Section 16–13–102 states in relevant part:

On any trial under the provisions of this part 1, a duly authenticated copy of the record of former convictions and judgments of any court of record for any of said crimes against the party indicted or informed against shall be prima facie evidence of such convictions and may be used in evidence against such party.

CRE 803(22) provides that "[e]vidence of a final judgment entered after a trial or upon a plea of guilty or nolo contendere, adjudging a person guilty of a crime punishable by death or imprisonment of more than one year, to prove any fact essential to sustain the judgment . . ." is not excluded by the hearsay rule.

Here, defendant does not dispute that the information pertaining to the 1978 conviction was properly admitted pursuant to § 16–13–102 to prove that conviction. That information indicates that he was sentenced for a term of imprisonment between ten and thirty years, pursuant to the New Mexico habitual criminal statute then in effect. That statute, N.M. Stat. Ann. § 31–18–5 (Michie 1978), stated as follows:

Any person who, after having been convicted within this state of a felony, or who has been convicted under the laws of any other state government or country, of a crime or crimes which if committed within this state would be a felony, commits any felony within this state not otherwise punishable by death or life imprisonment, shall he punished as follows:

. . .

B. upon conviction of third felony, if the subsequent felony is such that, upon a first conviction, the offender would be punishable by imprisonment for any term less than his natural life, then such person must be sentenced to imprisonment for a term not less than the longest term, nor more than three times the longest term prescribed upon a first conviction. . . .

The Judgment And Sentence On Supplemental Information, which documents defendant's admission to his 1975 burglary conviction, further reflects that the conviction was one of the three on which his 1978 conviction as a habitual criminal was based. Thus, the existence of the 1975 burglary conviction was "a fact essential to sustain" his 1978 conviction as a habitual criminal.

Accordingly, the evidence in the packet pertaining to the 1978 conviction was admissible under § 16–13–102, and the evidence in that packet pertaining to his 1975 conviction was admissible to prove that conviction under CRE 803(22). As a result, the trial court did not err in admitting the document in question into evidence for purposes of both convictions.

## B.

Defendant separately contends that the evidence, even if admissible, was insufficient to prove his conviction for the 1975 burglary. We conclude to the contrary.

A challenge to the sufficiency of the evidence requires a reviewing court to determine whether the relevant evidence, both direct and circumstantial, when viewed as a whole and in the light most favorable to the prosecution, is substantial and sufficient to support a conclusion by a reasonable person that the defendant is guilty of the crime charged beyond a reasonable doubt. The prosecution must be given the benefit of every reasonable inference that might fairly be drawn from the evidence. *People v. Inman*, 950 P.2d 640 (Colo.App.1997).

As discussed, the Judgment And Sentence On Supplemental Information was properly allowed into evidence. It unambiguously indicates that defendant admitted his 1975 burglary conviction, which was essential to his 1978 conviction as a habitual criminal. The document further reflects that defendant was represented by counsel when he made the admission.

We reject defendant's contention that the evidence was insufficient, despite defendant's admission to the conviction, "without additional evidence of the *corpus delecti*, or the fact that a crime occurred." The People were not required to prove defendant committed the crime, only that he had been convicted of the crime. *See* § 16–13–101(2), C.R.S.1998.

We conclude that the Judgment And Sentence On Supplemental Information, which reflects various indicia of reliability, together with the photographic evidence of defendant accompanying the packet pertaining to his 1978 conviction, was sufficient to prove defendant's 1975 burglary conviction. The trial court therefore did not err in sentencing defendant in this case as a habitual criminal.

## III.

Finally, defendant contends, and the People do not dispute, that the conviction and sentence for possession of cocaine in excess of 28 grams must be vacated because no such offense exists. We agree.

Another division of this court addressed the same issue in *People v. Salcedo*, 985 P.2d 7 (Colo.App. No. 96CA0880, May 14, 1998), decided after the convictions in question here. The division determined that § 18–18–405(3)(a), C.R.S.1998, acts only as a mandatory sentencing provision. It does not create a separate offense for possession of 28 grams or more of cocaine.

Defendant was convicted under an earlier version of the statute, Colo. Sess. Law 1992, ch. 71, § 18–18–405(3)(a) at 356. Although its language differs slightly from the version of the statute construed in *Salcedo*, the difference is not relevant to the question of whether the provision creates a separate offense. Because we agree with the conclusion in *Salcedo*, defendant's conviction and sentence for possession of 28 grams or more of cocaine must he vacated.

Defendant's conviction for possession of cocaine with intent to distribute, possession of drug paraphernalia, and his sentence as a habitual criminal are affirmed. His conviction for possession of 28 grams or more of cocaine with an intent to distribute is vacated, and the cause is remanded to the trial court for correction of the mittimus.

Judge DAVIDSON and Judge VOGT concur.